518-0303 People v. Samuel Johnson This case involved a defendant's triple homicide trial. The case had just gotten underway in this case when graffiti was found on the wall of one of the holding cells. And the state sought to have pictures of the graffiti admitted to show the defendant's consciousness of guilt and that he was harassing a witness. The graffiti written on the wall actually said, Reedy Bean is a wreck, snitch, bitch, and so is early kid, Chauncey Hilliard, Vincent Allen, Jim Sims. They are here to testify on my case today, 6418. Then a little bit later in the proceedings, there was an additional writing found on the wall in the holding cell, and that writing stated, God know I'm innocent. The court had a short hearing on this, and I'm not going to go into that. The court ended up sustaining the defense counsel's objection to the admission of the graffiti on the walls, and then that led to the state filing this appeal. That's how we got here. In this case, the defendant does challenge jurisdiction. The state does not believe jurisdiction is an issue here. In this case, the ward hearing had not yet concluded, so the jury had not been seated without an impaneled jury. When the court ruled that the evidence could not come in, obviously that jury had not been impaneled or sworn, so this is a proper 6048 appeal, and this court just does have jurisdiction on this appeal. Turning then to the admissibility of the graffiti as evidence of consciousness of guilt, the trial court incorrectly ruled that the writing was not relevant and that it was not an example of consciousness of guilt. There's a case, People v. Scraggins, cited in the state's brief. It's a 3rd District 1999 case, and that case states, a criminal defendant's attempt to intimidate a witness is admissible as consciousness of guilt. And then in Rule 404B, the first inquiry to happen, that is to occur, is whether the evidence tends to prove or disprove that the defendant committed the charged offense. In this case, that would be the triple murders. Second, if the proffered evidence is not probative of anything except defendant's propensity to engage in acts, bad acts, that would be inadmissible, if it's simply propensity. Here, though, the trial court improperly concluded that the other bad acts evidence was not relevant in this case. But here, that evidence tends to prove the defendant committed the murders, and he was attempting to silence anyone who may be there to testify on his case. It's not going to stop you there, but he, and I've got a copy of it, he allegedly wrote this in his holding cell, correct? Correct. So how in the world would any one of these people ever see that? That is an interesting side issue, is whether or not it would be seen by another person. The issue is, is him evidencing a guilty conscience? He wrote it there for that? But I thought part of the argument was that, if I remember correctly, my notes was that it was an argument in the briefs that he was trying to communicate a threat to the defendant. A threat to stop them from testifying. Yes, but even an attempted witness intimidation is enough in this case. But what do you attempt if you're in a holding cell? It's an attempt to communicate. Now, I used to do defense work as, is this a holding cell off of where the courtroom is? You've got people coming in and out of there a lot of times in there. This one did look different because the ones I've been in never had a toilet or a sink in them. A holding cell is in St. Clair County, isn't it? This one is in St. Clair County. Yeah, a holding cell in St. Clair County are completely apart from any kind of ability of anybody to cross by. I would, I mean, I know that because that's my home county, but clearly the trial court knew that. But again, whether or not he was actually going to be able to smoke out these alleged witnesses and get somebody to do something to harm them, I think that's really a side issue. I think the issue is he was getting that out of his mind because his guilty conscience was eating away at him, including the part where he said, God knows I'm innocent. But that's where the court needed to do a little bit more balancing. This case, the balancing test was not properly conducted. The court first determined it was not relevant and then determined that it was not admissible. In this case, the way this case should have occurred is the trial court should have determined whether or not the evidence was admissible for any other purpose. In this case, consciousness of guilt. Would that take some expert testimony in another hearing? It may or may not, Your Honor. I think the issue is on this case we were right in the beginning of the trial. It's possible that that would be needed on remand. So you have a motion and that's it? I'm sorry? You have just a motion. You don't have anything to prove anything can happen because of the motion. That's correct. I think there would have to be other evidence that comes in. How that happens on remand obviously is something that this court can issue directions with if it goes that way. But again, in looking at whether or not this information should have been given to the jury, there's a case called People v. Maya. In that case, the court held that where the uncharged other crime or bad act is far worse than the crime for which the defendant has tried, the danger of unfair prejudice is especially high. The court also held the converse of that is true, such as in this case, the other crime of wall graffiti was minor compared to a triple murder case. In that case, the Maya court says it is far less likely that such evidence will play any role in the jury's decision-making process. And that's what we have here. We have a Hayes triple murder and the state seeking to admit the wall graffiti concerning defendant's consciousness of guilt. It was highly relevant and it was highly probative of defendant's guilty mind. It's clear in the state's mind. Now, you're coming up with that on your own. I'm sorry. What supports that? What supports that? That he has a guilty mind. Yeah. Where did you get that? Well, I'll give you a case, Your Honor. People v. Carter, this is a third district case. Evidence that the defendant wished to escape from jail and acquired various items of contraband, including hacksaw blades, to do so was unlikely to inflame the passions of the jury. This is especially true when compared to the strong evidence of the relatively more heinous offense of attempted murder. That's basically answering the difference in the two types of evidence here. You've got a Hayes crime, a triple murder versus this relatively minor writing on the wall. And it's up to the state. And I think Justice Walsh is saying you're making the presumption, or the state is actually. The state is. This is a guilty mind. Yes. That's a presumption you're making from some random writing on the wall. Yeah. Right? I believe that is. Yes. The writing on the wall the state is arguing is evidence of defendant's guilty conscience. Yes, that's correct. But he's talking about other people who really being as a rat snitch bitch. He's not talking about himself. He's talking about those people. That's correct. That's an attempt to intimidate witnesses. But we need to keep these straight. One is guilty mind. One is admission for a bad act. One is relevancy. That's right. All different requirements. So we can't talk about them as if they're all the same. Well, they're all interrelated. They're interrelated. But the court found, one, this wasn't relevant. Which the state disagrees. I understand. But the court did make two separate findings. Yes, you're correct on that, Your Honor. They had a first hearing and then a second hearing, correct? Yeah. I believe the subsequent writing. Where he wrote God knows I'm innocent. Which could be his lawyer told him you did a problem, and so now he's abdicating his guilty mind. I'm innocent. I don't know about that one, Your Honor. But, I mean, it could be, like Justice Welch was saying, if you look at it that way, it's how we would interpret it. How this court would interpret it? No, no. The state decided that he couldn't. What he's saying is his lawyer said, Amy, you wrote something that's going to come in. And the guy is like, oh, okay. It's something you wrote that a person not guilty of any crime would not write. Well, I'm not guilty of any crime. And that is evidence of a guilty conscience. Well, that's a presumption that you make. I understand that. Yes. It's a presumption. But we did cite multiple third district cases and even a fifth district case that stated, in weighing the probative value of other crimes' evidence against its potential for prejudice, the inquiry does not turn upon the relative strength or weakness of the state's case in its absence. The admissibility of other crimes' evidence. If I may finish that quote. Well, you talk about other crimes, but he isn't convicted of anything. No, it's other bad acts. So it's not another crime. It's another bad act. Other bad acts or other crimes. The cases are really all over the board. So maybe one of the two, you might have a good case. Hopefully I have a good case. On the writing on the wall. On the handwriting on the wall. I'm not talking about the murders. Yes. I agree, Your Honor. And with that, I see my time is up. It's safe for revote. Thank you. Thank you, Mr. Stacey. Mr. Jones? Janowski. Janowski. Oh. You really truncated that signature. It's a mouthful. It takes a while to get it out. Good afternoon. May it please the Court, Counsel. My name is Daniel. Before you do that, I don't know that we formally called this case because the clerk asked me a question. So I need to do that. This is 518-0303, People v. Samuel Johnson. It's a state appeal. I'm sorry. And my name is Daniel Janowski, and I represent the appellate defendant, Samuel Johnson. Before I begin, at the beginning of my discussion this afternoon, I'd like to begin to touch upon the jurisdictional issue that I've raised in the brief. The law is clear that there's a distinction between suppression. So as this Court's aware, Illinois Supreme Court Rule 604A1 allows the state to appeal suppressions of evidence. And then there's a distinction between whether or not that suppression occurs pretrial or midtrial, which affects exactly what is meant by suppression of evidence. If it's pretrial, any exclusion of evidence, suppression of evidence, as long as it doesn't make it to the jury, is appealable by the state. If it's midtrial, we distinguish between a suppression, which has to do with constitutional or public policy considerations, versus an exclusion of evidence, which is based upon rules of evidence, because obviously the public policy says we don't want the state to appeal midtrial any type of objection that might be sustained by the court. And so while most of the cases, well, back up and say all the cases I've read deal with whether or not there's a suppression or exclusion midtrial, this case is interesting in that it deals with whether we're pretrial or midtrial. Obviously. The jury wasn't in panel. The jury wasn't in panel. Obviously, but we're in the midst of voir dire, so we're not at a pretrial hearing or anything. So I would. Well, pretrial is before in panel. Okay. I would suggest you not waste your time. Okay. All right. Well, I will move on to the merits of the case. There is a suggestion. Your Honor. I will move on to the merits of the case. As this Court's aware of this, this was an evidentiary ruling. The abuse of discretion standard of review applies. And as we know, the Court made two different findings. One is that this evidence was not relevant, and the second, that the prejudicial value outweighed its probative value. And abuse of discretion applies on both. Yes. And so to begin, the State says that this evidence is admissible as consciousness of guilt because my client tried to intimidate the witnesses that are included there. And in reference to that, they had cited about seven cases in their brief to show exactly this is what an attempt to intimidate a witness would be, to show the consciousness of guilt of a defendant. And as I wrote in my brief, these are differences of kind, not of degree. The seven involve defendants who write letters threatening to kill or get family members of witnesses. There's instances of desire to shoot a witness. These are the types of things that an intimidation of a witness, this would be proper evidence of an intimidation of a witness to show consciousness of guilt. And then piggybacking on, as I've tried to analogize in my brief, the statute for intimidation of witnesses to show exactly what else we might look at to see if there has been an intimidation of witnesses to show the consciousness of guilt. There was no communication. In the States, prima facie showing that my client had written this, they had to prove that nobody else had access to the cell. Nobody else saw anything in the cell. The prison guards were the ones that let him in, let him out, testified he's the only one that was in there. So in showing that my client was the author of this, they also had to prove that nobody else had the opportunity to see it. So there was no communication. This would be the same as scribbling something on a notepad and throwing it away, thinking a thought and not expressing it verbally. If there's no ability for somebody else to see this intimidation or to see this communication, then there could be no intimidation. When you say that, no ability to see, do you mean the intended person named in it, or is it just generally inability to see? I think in this case it's interesting in that I think it would apply I think since nobody else named it, let me think about that. Because clearly the jail guards could see it. The jail guards could see it. But yet it wasn't aimed at them. And it wasn't aimed at them. And with this list here, there was 59 names on it. The list on the wall included five of those. That had been filed by the state prior to trial. So there was no, so if somebody else, this could not have been a communication to somebody out in the community, like, hey, there's going to be some type of message passed to you to try to get these people, because this was all public knowledge of who was going to be testifying in the case in the first place. Yeah, but I think it's the way it's couched that the state is saying that consciousness of guilt is either rat, snitch, bitch, and they say they're here to testify. Yeah, and I don't think you'd find a defendant out there who would believe, who would stand up for the credibility of the state's witnesses. I think that this is just an attack upon their credibility. I think that those words, it's not a threat. It's more of him saying, I don't believe them. That's exactly what his attorney is going to do during trials to try to attack the credibility of these witnesses so that the jury doesn't believe them. And so I don't think that goes to consciousness of guilt or somehow through an attempt to intimidate. Well, what about Justice Borre's question to the state that there must be some communication? I mean, these are holding cells. Yes. What about that issue? Exactly. I don't think that there could be any communication here because... But is that relevant? The inability to communicate a duty individual's name? I think it is relevant because if... Relevant for the same reason as if he's writing letters to his attorney, or he's just writing notes in a journal or something like that, if he knows that it's not going to be communicated to anybody else, these are his private thoughts put down somewhere. If nobody else would be intimidated by them, then the whole consciousness of guilt, the whole threat, the whole intimidation aspect, then I think would be removed. But just to be clear, that's what I thought. There were two arguments related. First of all, the state was arguing that this was a threat to these particular people, and then the state either... I thought the state was more talking about the second, the God know I'm innocent part that went to the consciousness of guilt. So I'm looking at them as two separate issues and not related. That's why I asked about the communication of a threat. To me, it's separate than consciousness of guilt. So I just want to make sure I'm looking at them as two separate arguments and not together. Okay. So as far as the list of witnesses and the intimidation there, I don't think just the words themselves are communicating a threat to anybody, calling somebody... There's no communication thereof, as these examples show, of other threats to intimidate witnesses, physical harm, bribery, those types of actual threats versus just some type of attack on credibility. And if there's no further questions on that aspect, I'll move on to the second reason why we asked this Court to affirm, and that has to do with the trial court's weighing of the prejudice versus the probative value of this evidence. As we've been discussing today, what we're talking about here is a list of 559 witnesses, and so the probative value would be very little here. He wrote this on a wall. Nobody else had access to this. Nobody else could see this. And so the probative value of a list of witnesses would be low versus a highly prejudicial aspect in which this would have to be revealed to the jury. As I analogized in the brief, you know, this is the same as the court found. Putting him in the jail cell would be prejudicial for the jury to know that, you know, he sits in this jail cell while all these court proceedings or breaks are occurring, which I think would be analogous to making a defendant, you know, sit in an orange jumpsuit during trial. This starts peeling away this presumption of innocence that is discussed by the Supreme Court, not allowing bad or allowing shackles during trial. And so, therefore, since the prejudicial value outweighs any type of probative value, the court was correct in excluding that evidence. If there's no further questions, thank you for your time. Do you have any other questions? Thank you very much. Thank you. Stacey? I do not have much further, Your Honors, except that the State does believe that this evidence is highly probative of defendants' consciousness of guilt. And People v. Hale, that is a third district case that says the admissibility of other crimes' evidence is determined by whether it serves a legitimate purpose in the search for truth, even though an inevitable byproduct of its admission is showing criminal propensity. And I just attributed that case to the wrong court. There's a third district Hale case. This is a fifth district Hale case I cited here. One of the things, if this case does go back on remand, is that the court could look at is there a way to let the jury see what these weren't said without letting them know that it was contained in a jail holding cell. If that's the part that is more of the prejudicial nature, I think the trend has been, because in common law, none of this was admissible. You could not admit anything about other bad acts, other crimes, nothing. But as time has gone on, courts have determined some of those things actually do serve a legitimate purpose. And so in this case, if it does go back on remand, that is something the trial court could explore. And the State also pointed out that the additional IPI 3.14 could also help eliminate any potential unfair prejudice. Let me ask you, if the court was right that there was no probative value to this, that it would have been prejudicial, if that's the first issue that this court considers and we find there was no abuse of discretion, would you agree then that it wouldn't come in under your other consciousness of guilt argument? I mean, does one trump the other, basically, is what I'm asking. Wow. Because if it's not, if it's too prejudicial, then it's too prejudicial. Right. That's correct. I think you're right. That's what I'm thinking. I think you're right. If it's too prejudicial, I think it's too prejudicial for whatever the purpose is. Right. But I think in this case, there's certainly a way to minimize that that could be explored on remand if this court would be inclined. That would certainly be our request. I understand, but I wanted to ask the legal argument about whether one trumps the other. And you would agree it would. I hate to answer on the seat of my pants, but that's what I'm going to have to do here. Okay. That sounds right. I appreciate that. Okay. Thank you, Your Honor. Any other questions? No. Thank you. Thank you for your arguments. This will take a matter under advisement. The order will be issued in due course. That concludes our afternoon docket. We will be in recess until tomorrow morning at 9 a.m. Thank you.